UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STEVEN H.,[1] | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) No. 1:20-cv-02608-SEB-MG |
| | ) |
| KILOLO KIJAKAZI,[2] Acting Commissioner of the Social Security Administration, | ) |
| | ) |
| *Defendant.* | ) |

## REPORT AND RECOMMENDATION

In April 2018, Plaintiff Steven H. applied for disability insurance benefits ("DIB"), alleging a disability onset date of November 1, 2014. [Filing No. 14-3 at 3; Filing No. 14-5 at 2-8.] His application was initially denied on July 19, 2018, and upon reconsideration on November 2, 2018. [Filing No. 14-2 at 16; Filing No. 14-4 at 9-15.] The Administrative Law Judge Latanya Richards (the "ALJ") conducted a video hearing on October 28, 2019. [Filing No. 14-2 at 32-65.] The ALJ issued a decision on December 26, 2019, concluding that Steven H. was not entitled to receive benefits. [Filing No. 14-2 at 13-25.] The Appeals Council denied review on August 19, 2020. [Filing No. 14-2 at 2-7.] On October 7, 2020, Steven H. timely filed this civil action asking the

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Fed. R. Civ. P. 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when he was named Acting Commissioner.

Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.]

The Court referred this matter to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 73. [Filing No. 16.] For the following reasons, the undersigned recommends that the Court **REVERSE** the decision of the Commissioner.

## I.
### STANDARD OF REVIEW

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, __U.S.__, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* In reviewing the ALJ's decision, the Court must uphold the ALJ's finding of fact if the findings are supported by substantial evidence. *Stephens*, 888 F.3d at 327. For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless

2

'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, he will automatically be found disabled. If a claimant satisfies Steps One and Two, but not Three, then he must satisfy Step Four. Once step Four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

3

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley v. Colvin,* 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted). An ALJ commits an error of law if her decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan,* 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g., Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Steven H. was 39 years old on the date of his alleged onset of disability. [Filing No. 14-3 at 3, 14; Filing No. 14-5 at 2.] He has at least a high school education and previously worked as a spray painter, direct care worker, and quality inspector prior to his alleged onset date. [Filing No. 14-3 at 4.] Steven H.'s application alleges that he can no longer work because of degenerative disc disease of the lumbar spine, diabetes, neuropathy, right hip osteoarthritis, right knee osteoarthritis,

4

nonalcoholic fatty liver disease, morbid obesity, cognitive disorder, depression, and anxiety. [Filing No. 14-3 at 3, 15.][3]

The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and concluded that Steven H. was not disabled. [Filing No. 14-2 at 28.] Specifically, the ALJ found as follows:

- At Step One, Steven H. had not engaged in substantial gainful activity[4] during the period at issue. [Filing No. 14-2 at 18.]

- At Step Two, Steven H. "has the following severe impairments: degenerative disc disease of the lumbar spine, diabetes, neuropathy, right hip osteoarthritis, right knee osteoarthritis, nonalcoholic fatty liver disease, morbid obesity, cognitive disorder, depression, and anxiety (20 CFR 404.1520(c))." [Filing No. 14-2 at 18.]

- At Step Three, Steven H. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR 404.1520(d), 404.1525, and 404.1526. [Filing No. 14-2 at 19.]

- After Step Three but before Step Four, Steven H. had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) except: the claimant could occasionally climb ramps and stairs, but cannot climb ladders, ropes or scaffolds; can occasionally stoop, kneel, crawl, and crouch; must avoid exposure to unprotected heights, and hazardous machinery and must avoid balancing on narrow, slippery, or moving surfaces; can frequently handle and finger bilaterally. The individual can perform simple, routine tasks but not at a production rate pace such as an assembly line; make simple, work-related decisions; can adapt to occasional work place changes; can have occasional interaction with co-workers and supervisors and brief and superficial contact with the general public. He would require a sit or stand option as follows: after 10 minutes of sitting, he would need to stand for 1 minute or less before returning to a sitting position. He would require a cane for ambulation." [Filing No. 14-2 at 20-21.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Steven H.'s RFC, the AL determined Steven H. was unable to perform any past relevant work. [Filing No. 14-2 at 24.]

- At Step Five, relying on the VE's testimony and considering Steven H.'s age, education, work experience, and RFC, the ALJ determined Steven H. is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, such as final assembler and clerical sorter. [Filing No. 14-2 at 24.]

## III.
### DISCUSSION

Steven H. details the following issues on appeal: (1) whether Dr. Yamato's report should have been afforded medical opinion status; (2) whether the ALJ erred by failing to have a psychologist or other medical expert review Dr. Yamato's report; (3) whether the ALJ had an obligation to address Dr. Yamato's report in some fashion; and (4) whether the RFC accounts for the moderate CPP finding. [Filing No. 17; Filing No. 19.]

### A.   Medical Opinion Status of Dr. Yamato's Report

Steven H. first contends that a consultive neuropsychological examination report prepared by Dr. Yuko Yamato, Psy.D., a neuropsychologist, is a "medical opinion," and thus one the ALJ should have analyzed. [*See* Filing No. 17 at 21-22 and Filing No. 19 at 3-10 (Steven H. arguing Dr. Yamato's report is a medical opinion).] The Commissioner asserts that Dr. Yamoto's report is not a medical opinion and therefore the ALJ had no obligation to separately analyze it. [*See* Filing No. 18 at 18-25.]

The Commissioner argues that "Dr. Yamato's report is not a medical opinion because it does not address the kinds of activities that would trigger the theoretical fatigue and stress, or whether the 'greater cognitive difficulties' that resulted would be great enough to preclude even simple, routine tasks." [Filing No. 18 at 19.] In support of her proposition, the Commissioner

6

argues this case is comparable to *Robert W. v. Saul*, No. 1:20-cv-643-JMS-TAB, 2020 WL 6557727 (S.D. Ind. Nov. 9, 2020), where the Court found that a letter provided by Robert W.'s doctor "does not contain any sort of assessment of Robert W.'s vocationally-relevant functional limitations, and therefore cannot properly be considered a 'medical opinion' under the regulations." *Id.* at *4. The Commissioner states that "Dr. Yamato believed that her testing showed 'no discernible pattern of deficits,' and, rather than assessing concrete limitations on Plaintiff's ability to work, she offered only tepid observations that Plaintiff should try to schedule activities when he 'is feeling his best' and 'may also benefit from scheduling rest periods.'" [Filing No. 18 at 19.] Lastly, the Commissioner argues "[t]hat [Dr. Yamato's report] is not an assessment of Plaintiff's particular mental abilities or limitations, but rather general advice for maintaining 'optimal well-being.'" [Filing No. 18 at 19.]

    Steven H. reasons that Dr. Yamato's diagnosis of "Major Depressive Disorder, Recurrent, Moderate & Cognitive Disorder, NOS" and other notations were all statements from a medical source. [Filing No. 19 at 4.] Next, Steven H. argues that the only question remaining is whether Dr. Yamato's report contains any limitations, which he believes it does. [Filing No. 19 at 4.] Steven H. contends Dr. Yamato's recommendations that he schedule important activities during the day when he is feeling his best and that he may benefit from scheduling rest periods to avoid fatigue, are both limitations. [Filing No. 19 at 4.] Steven H. then opposes the Commissioner's analysis of *Robert W.*, arguing that Dr. Yamato's report is not comparable to Robert W.'s physician's letter because Dr. Yamato provided recommendations going forward, whereas Robert W.'s physician "did not describe anything that he wanted Robert W. to do or not to do." [Filing No. 19 at 5.]

The ALJ is required to evaluate every medical opinion he or she receives. 20 C.F.R. § 416.927(c). For claims filed by an adult on or after March 27, 2017, the regulation's definition of medical opinion is changed to:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: [...]
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).[5] Steven H. filed his claim in April 2018; therefore, any medical opinion must conform to the above definition.

Upon referral from Angela Nielsen, a psychiatric mental health nurse practitioner who had been seeing Steven H., Dr. Yamato conducted a neuropsychological evaluation of Steven H. on January 10, 2019. [Filing No. 14-8 at 259-61.] To generate her report, Dr. Yamato performed attention/processing speed examinations and presented test results detailing low average basic attention, low average mental calculation, average visual scanning, borderline processing speed on a graphomotor coding task, average processing speed on an oral version of that same task, and average attention to visual detail. [Filing No. 14-8 at 260-261]. Dr. Yamato's report discusses the

---

[5] The treating-physician rule has been modified to eliminate the "controlling weight" instruction for newer claims. *Compare* 20 C.F.R. § 404.1527 (for claims filed before March 27, 2017), with 20 C.F.R. § 404.1520c (for claims filed on or after March 27, 2017).

possibility of cognitive difficulties when fatigued and physically or psychologically stressed. Dr. Yamato's report also contains a diagnostic section, a summary of the evaluation, and a recommendation to follow-up with Nurse Nielsen and other care providers for effective medical and psychiatric management. [Filing No. 14-8 at 259-260.]

While Steven H. is correct that the report is a statement by a medical source and the first part of the "medical opinion" definition is present, the recommendations in Dr. Yamato's report do not appear to contain an assessment of Steven H.'s vocationally-relevant functional limitations. Here, Dr. Yamato's opinions do not relate to Steven H.'s ability to perform specific basic work activities but reflect judgments about the nature and severity of his impairments and his ability to work generally. Rather, Dr. Yamato's report is in line with the definition of "other medical evidence," which includes judgments about the nature and severity of a claimant's impairments, a claimant's medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis. *See* 20 C.F.R.§ 404.1513(a)(3). Accordingly, the undersigned agrees with the Commissioner that Dr. Yamato's report is not a "medical opinion" under the regulations, and the ALJ was not required to address the regulatory factors used to evaluate its persuasiveness. Thus, the undersigned recommends there is no basis for remand on this issue.

### B. The ALJ's Failure to Involve a Psychologist or Other Medical Expert to Review Dr. Yamato's Report

Steven H. contends that no medical expert or psychologist has reviewed his file since October 30, 2018, and no medical expert or psychologist appeared at the hearing or was asked to answer interrogatories before or after October 28, 2019. [Filing No. 17 at 17.] Steven H. argues that the ALJ's RFC was flawed because there was no involvement of a physician or psychologist to review Dr. Yamato's neuropsychological report, which occurred later than the state agency consultant's latest reviews. [Filing No. 17 at 17.]

The Commissioner responds, citing *Skinner v. Astrue*, 478 F.3d 836, 843 (7th Cir. 2007) and *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000), that the Seventh Circuit has found an ALJ is not required to solicit additional medical evidence when the record contains enough information to support a disability decision. [Filing No. 18 at 14.] The Commissioner argues that Steven H. did not challenge the ALJ's finding that Nurse Nielsen's checkbox opinions were not supported, noting Nurse Nielsen's documentation of symptom improvement with treatment. [Filing No. 18 at 14-15.] The Commissioner further contends that Steven H.'s argument fails because he did not explain why Dr. Yamoto's evaluation would be an intervening medical event that would render the evidence the ALJ considered outdated or irrelevant. [Filing No. 18 at 16.]

Steven H. replies that Dr. Yamato's report contained abnormal findings that were new and significant, describing psychological limitations. [Filing No. 19 at 1-3.] Steven H. contends that Dr. Yamato's diagnosis of Major Depressive Disorder, Recurrent, Moderate & Cognitive Disorder, NOS, along with his various recommendations, warranted additional review by another physician. [Filing No. 19 at 14-15.]

"An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill,* 882 F.3d 722, 728 (7th Cir. 2018); *ee Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit new MRI to medical scrutiny). It is true, however, that not every scrap of evidence is potentially decisive; "[i]f an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end." *Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017). The question is whether "the new

10

information 'changed the picture so much that the ALJ erred by ... evaluating himself the significance of [the subsequent] report,' or whether the updated information was minor enough that the ALJ did not need to seek a second opinion." *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021) (quoting *Stage*, 812 F.3d at 1125).

After Step Three but before Step Four, the ALJ found Steven H. has a mental RFC to perform "simple, routine tasks but not at a production rate pace such as an assembly line; make simple, work-related decisions; can adapt to occasional work place changes; can have occasional interaction with co-workers and supervisors and brief and superficial contact with the general public." [Filing No. 14-2 at 20-21.] In making her RFC determination, the ALJ ultimately found Nurse Nielsen's October 2018 mental RFC assessment and various treatment and examination notes from July 2018 through September 2019, persuasive. [Filing No. 14-2 at 23.][6]

Nurse Nielsen's RFC assessment restricted Steven H. to moderately severe limitations in the areas of understanding and memory, CPP, and adaptation, with moderate limitations in the area of interaction with others. [Filing No. 14-8 at 225-226.] Further, Nurse Nielsen provided treatment notes, with her latest progress notes from September 2019 detailing a diagnosis of recurrent major depressive disorder, without psychotic features. [Filing No. 14-9 at 327.][7]

State agency psychologists Dr. William Shipley, Ph.D. and Dr. Donna Unversaw, Ph.D., reported on June 15, 2018, and October 31, 2018, respectfully, that Steven H. had non-severe impairments of depressive, bipolar and related disorders and anxiety and obsessive-compulsive

---

[6] Of note, the ALJ referenced Nurse Nielsen's September 2017 mental RFC, however the proper reference is to Nurse Nielsen's October 2018 RFC. Nurse Nielsen indicated that the assessed mental limitations had been in effect since September 2017. [Filing No. 14-8 at 225-226.]

[7] Nurse Nielsen's September 2019 treatment notes detail brighter affect, clear and logical thoughts, and normal cognition and memory. [Filing No. 14-9 at 327.]

11

disorders. [Filing No. 14-3 at 6, 19.] Both psychologists opined Steven H. had no limitations with respect to CPP and adapting or managing oneself, and mild limitations with respect to understanding remembering, or applying information and interacting with others. [Filing No. 14-3 at 7; 19.] However, it should be noted that the ALJ did not mention whether she found these state consultant's opinions persuasive in her mental RFC analysis. The ALJ noted only the persuasiveness of the state consultants in analyzing Steven H.'s physical RFC. [Filing No. 14-2 at 22-23.]

In comparison, a review of Dr. Yamato's evaluation report shows a diagnosis of Major Depressive Disorder, Recurrent, Moderate & Cognitive Disorder, NOS. [Filing No. 14-8 at 258.] Dr. Yamato opined that "[a]s testing documents no discernible pattern of deficits, [Steven H.'s] current cognitive profile may serve as a baseline for a future reference", and that "[f]actors that may be contributing to his subjective experience of cognitive challenges include fluctuations in mood due to depression, chronic medical conditions …, chronic pain, sleep irregularities, fatigue, and stress." [Filing No. 14-8 at 259.] Dr. Yamato recommended that Steven H. may benefit from scheduling rest periods into his daily routine and participating in activities at a comfortable pace. [Filing No. 14-8 at 260.] Additionally, Dr. Yamato reported various results from tests conducted, including those of Steven H.'s attention and processing speed, memory, and mood. [Filing No. 14-8 at 260-261.] The ALJ made no mention of Dr. Yamato's report in her RFC analysis.

The undersigned is not persuaded by the Commissioner's argument that Dr. Yamato's report would not have made a difference in the ALJ's mental RFC analysis. Additionally, the argument that improvements in Steven H.'s mental health, documented by Nurse Nielsen's treatment notes in September 2019, would not require evaluation of Dr. Yamato's report, is not persuasive. The ALJ ultimately determined that Steven H. was moderately restricted in all

paragraph B criteria, a more limited RFC than the state agency medical consultants recommended, and less limited than Nurse Nielsen recommended. While it is true that neither Dr. Shipley nor Dr. Unversaw reviewed Dr. Yamato's report, the ALJ did not review state agency consultant's analysis as part of her mental RFC. Because the both the state agency mental RFCs, and Nurse Nielsen's RFC relied upon by the ALJ, were conducted at a time prior to Dr. Yamato's report, it cannot be said that Dr. Yamato's report would not have changed the picture so much as to require another psychologist or medical expert to review this report and issue a separate finding. *See Moreno,* 882 F.3d at 728.

As such, the undersigned **RECOMMENDS** that the Court **REVERSE and REMAND** this case so the Agency can solicit an updated mental-health assessment on which Steven H.'s functional capacity reasonably can be determined.

### C. Steven H.'s Mental RFC Limitations

Steven H. challenges whether the ALJ's RFC sufficiently accommodated his moderate limitations regarding concentration, persistence, and pace ("CPP"). [Filing No. 17 at 21; Filing No. 19 at 13.] Steven H. contends that while a mental RFC "[e]liminating a production rate pace such as an assembly line is undoubtedly necessary, [] that restriction does not account for the problems that [Steven H.] would have with even average-paced jobs." [Filing No. 17 at 21.]

Steven H. relies on cases such as *Lothridge v. Saul*, 984 F.3d 1227 (7th Cir. 2021) and *Martin v. Saul*, 950 F.3d 369 (7th Cir. 2020) where the Seventh Circuit held that an ALJ attempting to account for moderate limitations in CPP by limiting claimants to routine tasks is insufficient. Steven H. lastly argues that while he does not disagree that someone with low processing speed scores may not have any cognitive limitations, the ALJ did not seriously consider Dr. Yamato's

report detailing a low processing speed score, which at least raise the question of whether he would have problems maintaining pace and persistence at a job. [Filing No. 19 at 13.]

The ALJ must determine an individual's RFC, meaning "what an individual can still do despite his or her limitations," SSR 96–8p, based upon medical evidence as well as other evidence, such as testimony by the claimant. *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even as to limitations that are not severe. *Id.*; *see* 20 C.F.R. § 404.1529(a) (in making a disability determination, the ALJ must consider all of a claimant's symptoms, including pain, and how those symptoms affect a claimant's daily life and ability to work). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or her friends and family. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

The ALJ must then build "an accurate and logical bridge from the evidence to the conclusion" so that a court can assess the validity of the agency's decision and afford the claimant meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). Review of an ALJ's decision is deferential and remand is appropriate when the ALJ committed a legal error or relied on less than substantial evidence. *See Martin*, 950 F.3d at 373. The substantial evidence requirement does not present a high hurdle, needing only to identify "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154. The ALJ's determination here does not meet this benchmark.

Here, in the Step Three analysis, the ALJ found that Steven H. had moderate limitations in CPP. [Filing No. 14-2 at 20.] The ALJ's subsequent RFC limited Steven H. to "simple, routine tasks but not at a production rate pace such as an assembly line; make simple, work-related decisions; can adapt to occasional workplace changes; can have occasional interaction with

coworkers and supervisors and brief and superficial contact with the general public." [Filing No. 14-2 at 21.]

Steven H. is right to point out that an RFC limiting a claimant to simple tasks is "generally" not enough to account for moderate CPP limitations. *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). This is because "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Id.* The Seventh Circuit has recognized that while there are no RFC "magic words" that an ALJ must use, the ALJ must rationally articulate the grounds for her decision so that courts may afford the claimant a meaningful review of the ALJ's findings. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Thus, the RFC and hypotheticals "must account for both the complexity of the task and the claimant's ability to stick with a task over a sustained period." *Warren v. Colvin*, 565 F. App'x 540, 544 (7th Cir. 2014); *Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019) ("[W]hen an ALJ finds there are documented limitations of [CPP], the hypothetical question presented to the VE must account for these limitations."). *See also Varga v. Colvin*, 794 F.3d 809, 814-15 (7th Cir. 2015) (holding that further limitation of "free of fast paced production requirements, including only simple work related decisions with few if any work place changes and no more than occasional interaction with coworkers or supervisor" was insufficient to capture claimant's CPP limitations).

During the hearing, the ALJ posed a hypothetical question to the VE using language nearly identical to the eventual mental RFC finding. The ALJ adopted the following hypothetical, in relevant part of the VE's consideration—"They can perform simple, routine tasks, but not at a production-rate pace such as an assembly line. They can make simple, work-related decisions and adapt to occasional workplace changes. They can have occasional interaction with coworkers,

15

supervisors and the general public." [Filing No. 14-2 at 62.] The VE opined that the individual would not be able to perform any Steven H.'s past work, but "[t]here would be unskilled work at the sedentary exertional level, in a wide range of inspection and packing positions." [Filing No. 14-2 at 62.] The ALJ then added an additional limitations as follows:

- That "after ten minutes of sitting, they would need to stand for one minute or less before returning to a sitting position." [Filing No. 14-2 at 63.] The VE testified that the same jobs and numbers would be available. [Filing No. 14-2 at 63.]

- That an "individual required a cane for ambulation." [Filing No. 14-2 at 63.] The VE testified that the same jobs and numbers would be available. [Filing No. 14-2 at 63.]

- That an "individual were limited only to brief and superficial contact with the general public, opposed to occasional contact." [Filing No. 14-2 at 63.] The VE testified that the same jobs and numbers would be available. [Filing No. 14-2 at 63.]

- Within the context of the first hypothetical, that an "individual could sit up to six hours a day and only stand and walk for a total of one hour per day." [Filing No. 14-2 at 63.] The VE testified that there would be no competitive full-time employment. [Filing No. 14-2 at 64.]

- That an individual "needed an extra one-hour break in addition to the normal, normally scheduled breaks." [Filing No. 14-2 at 64.] The VE testified that there would be no competitive full-time employment. [Filing No. 14-2 at 64.]

CPP "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of task commonly found in work settings." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00E(3). As noted previously, state agency psychologists Dr. Shipley and Dr. Unversaw found that Steven H. had no limitations with respect to CPP, however the ALJ did not mention whether these opinions were persuasive in determining Steven H.'s mental RFC. [Filing No. 14-3 at 7; 19.] The ALJ noted only that she found Nurse Nielsen's mental RFC persuasive in part, which opined Steven H. had moderately severe CPP limitations. Here, the ALJ did not explain what evidence beyond a portion of Nurse Neilson's

16

opinion specifically led her to find Steven H.'s CPP limitations to be moderate. [Filing No. 14-2 at 23.]

Additionally, while the ALJ seemed to recognize Steven H.'s CPP challenges by finding Steven H. moderately limited and can perform tasks not at a production rate, she failed to articulate, beyond the boilerplate routine language frowned upon by the Seventh Circuit, how this limitation impacted his functional capacity. Additionally, the VE testified, from the ALJ's final hypothetical, that a limitation of a one hour break in addition to regularly scheduled breaks would provide for no available jobs. [Filing No. 14-2 at 64.] However, the ALJ not provide an explanation as to why this proposed limitation, or any evidence in support or rejection, was confronted in her RFC analysis. *See Martin,* 950 F.3d at 374 (*citing Winsted*, 923 F.3d at 477 "As we have labored mightily to explain, however, the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace."). "Put another way, someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be." *Id.* Here, there was not a complete discussion of CPP aspects to detail Steven H.'s functional capacity within the assessed RFC.

The ALJ's generalized mental limitations of simple, routine tasks but not at a production rate pace such as an assembly line, fails to build a logical bridge between the ALJ's finding of a moderate limitation in CPP and the conclusion contained in the RFC. The undersigned is unable to construct a logical bridge between the moderate limitation finding and the RFC finding without a more robust explanation from the ALJ with supporting evidence. *See Ian K. v. Kijakazi*, No. 1:20-1918-SEB-MPB, 2021 WL 4177202, at *4-5 (S.D. Ind. Aug. 13, 2021), *report and recommendation adopted*, 2021 WL 4171429 (S.D. Ind. Sept. 14, 2021) (finding RFC

inadequately addressed moderate limitations in CPP where the RFC limited claimant to simple, routine tasks free of fast-paced production).

For these reasons, the undersigned **RECOMMENDS** that the Court **REVERSE and REMAND** this case so the ALJ can address her logic with respect to the aspects of concentrating, persisting, and maintaining pace in her RFC finding.

### D. The ALJ's Obligation to Address Dr. Yamato's Report in Some Fashion

Lastly, Steven H. challenges the ALJ's failure to address Dr. Yamato's report at all, maintaining that the ALJ has an obligation to evaluate and confront all evidence that does not support the ALJ's conclusion. [Filing No. 17 at 21-22.] The Commissioner argues that though in a perfect world, the ALJ would have acknowledged Dr. Yamato's report, Steven H. has not shown how this report supports greater restrictions beyond what the ALJ found. [Filing No. 18 at 21.] The undersigned will address Steven H.'s final argument for completeness.

The Commissioner's contention that Steven H.'s argument fails because he has not identified a medical opinion detailing greater limitations than those adopted by the ALJ does have some merit. There is no medical opinion in the record detailing such additional limitations. However, Steven H.'s argument that the processing speed score assessed by Dr. Yamato raises the question of whether he will have problems maintaining pace and persistence at a job, and consideration of Dr. Yamato's recommendation for additional rest periods throughout the day, are well-taken. *See Pate v. Kijakazi*, 2021 WL 3627118, at \*3 (7th Cir. Aug. 17, 2021). As discussed previously, the VE testified, from the ALJ's final hypothetical, that a limitation of a one hour break in addition to regularly scheduled breaks would provide for no available jobs. [Filing No. 14-2 at 64.] However, this limitation was not included in the ALJ's final RFC finding. Additional limitations through breaks or time off tasks beyond those identified by the ALJ, could very well

be found through Dr. Yamato's report that the ALJ failed to discuss at all in her analysis. *Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016).

For these reasons, the undersigned **RECOMMENDS** that the Court **REVERSE and REMAND** this case, so the ALJ confront the evidence provided in Dr. Yamato's report.

## IV.
### CONCLUSION

For the reasons detailed above, the undersigned recommends the Court **REVERSE** the ALJ's decision denying Steven H. benefits.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Failure to file timely objections within fourteen (14) days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 2/8/2022

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

Distribution:

Lu Han
SOCIAL SECURITY ADMINISTRATION
lu.han@ssa.gov

Timothy J. Vrana
TIMOTHY J. VRANA LLC
tim@timvrana.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov